## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## WINCHESTER DIVISION

| | |
|---|---|
| **WILLIAM MOTT**, *on behalf of himself and all others similarly situated*, <br><br> *Plaintiff*, <br><br> v. <br><br> **TENNESSEE WHOLESALE NURSERY, LLC,** <br><br> *Defendant*. | **Civil Case No.: 4:26-cv-00003** <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.    This action arises out of the illegal marketing practices of Defendant, Tennessee Wholesale Nursery, LLC ("Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.    Defendant sends telemarketing text messages advertising Defendant's products and services.

3.    Defendant continues to send telemarketing text messages even after Defendant receives requests from the called/texted party requesting that Defendant stop sending its messages.

4.    Accordingly, Plaintiff brings this action on behalf of himself and classes of similarly situated individuals.

### JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6.    This Court has jurisdiction over Defendant because Defendant conducts business

1

transactions in this District and made calls/sent text messages from this District as part of the business it conducts in this District.

7.      Venue is proper in this District because some of the wrongful conduct giving rise to this case occurred in and/or was directed from this District in the Winchester Division.

## PARTIES

8.      Plaintiff William Mott ("Mr. Mott") is, and at all times mentioned herein was, a citizen and resident of Gainesville, Georgia.

9.      Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10.     Defendant is, and at all times mentioned herein was a limited liability company organized and existing under the laws of the state of Georgia with a principal office address located at 12845 State Route 108, Altamont, TN 37301-3000.

11.     Defendant may be served via its registered agent, Tammy D. Sons located at 12845 State Route 108, Altamont, TN 37301-3000.

12.     Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

2

14.     The TCPA establishes a national "do not call" database of numbers not to be called.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

15.     These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

16.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

17.     A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

*Internal Do Not Call Regulations*

18.     The TCPA also required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

19.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

20.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

21.     The FCC found that "the company-specific do-not-call list alternative is the most

3

effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

22.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

23.     These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

24.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

25.     These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

26.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

---

[1]  The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

4

27.     There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through §

227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages
> and injunctive relief for do-not-call violations 'by or on behalf of'
> a company. In accordance with this statutory provision, the
> Commission's company-specific do-not-call rules provide that
> '[n]o person or entity shall initiate any call for telemarketing
> purposes to a residential telephone subscriber unless such person or
> entity has instituted procedures for maintaining a list of persons
> who request not to receive telemarketing calls made by or on behalf
> of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

28.     A company must comply with the procedures for the company specific do-not-call

list. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

29.     Though some of these requirements mention "residential" telephones, they were all

extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. §

64.1200(e).

30.     Further, a person or entity can be liable for calls made on its behalf in violation of

the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g., In re Rules &*

*Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's

"rules generally establish that the party on whose behalf a solicitation is made bears ultimate

responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding

declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law

principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad

range of agency principles, including not only formal agency, but also principles of apparent

authority and ratification."  *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator*

*Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

5

31.     Accordingly, an entity can be liable under the TCPA for a prohibited call/text message made on its behalf under a number of theories including vicarious liability.  Under those circumstances, the seller is properly deemed to have initiated the call or text message through the person or entity that actually placed the call or sent the text message.

32.     Finally, text messages, such as the ones sent by Defendant, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## FACTUAL ALLEGATIONS

33.     Plaintiff is the user of his personal cellular telephone number (678)-XXX-7560.

34.     Plaintiff's cellular telephone number has been registered on the National Do Not Call Registry since August 8, 2009.

35.     Plaintiff registered his telephone number on the National Do Not Call Registry because he did not want unsolicited telemarketing calls and text messages.

36.     On or about September 23, 2025, at 9:00am, Plaintiff began receiving telemarketing text messages from Defendant.

37.     The first message came from telephone number (888) 780-8245.



38.     As shown above, Plaintiff immediately replied with "stop" to opt-out because he did not want to receive telemarketing messages from Defendant.

39.     Plaintiff then received a confirmation message, showing his message was received.

40.     Despite his request to no longer receive such messages, Defendant texted him one minute later from a different telephone number, (888) 489-6064, and continued to send Plaintiff unwanted messages:





41.     As shown above, Defendant sent Plaintiff telemarketing text messages, after he requested that they stop, on the following dates and times:

- September 23, 2025 at 9:01am;

- September 25, 2025 at 9:00am;

- September 30, 2025 at 9:01am;

- October 2, 2025 at 9:01am;

- October 7, 2025 at 9:01am;

- October 9, 2025 at 9:00am;

- October 14, 2025 at 9:00am;

- October 16, 2025 at 9:00am;

- October 21, 2025 at 9:01am;

- October 23, 2025 at 9:01am;

9

- October 28, 2025 at 9:00am;

- October 30, 2025 at 9:00am;

- November 4, 2025 at 9:01am;

- November 6, 2025 at 9:01am;

- November 11, 2025 at 9:00am;

- November 13, 2025 at 9:00am;

- November 18, 2025 at 9:00am;

- November 25, 2025 at 2:42pm; and

- November 27, 2025 at 9:00am.

42.     Defendant also sent Plaintiff messages from yet another different telephone number, (888) 561-9049:







43.     As shown above, Defendant sent Plaintiff telemarketing text messages to Plaintiff on the following dates and times:

- December 2, 2025 at 9:00am;

- December 4, 2025 at 9:00am;

- December 7, 2025 at 9:00am;

- December 9, 2025 at 9:01am;

- December 11, 2025 at 9:01am;

- December 14, 2025 at 9:01am;

- December 16, 2025 at 9:01am;

- December 18, 2025 at 9:01am;

- December 21, 2025 at 9:00am;

- December 23, 2025 at 9:00am;

- December 25, 2025 at 9:00am;

- December 28, 2025 at 9:00am;

- December 30, 2025 at 9:00am;

- January 1, 2026 at 9:00am;

- January 4, 2026 at 9:01am;

- January 6, 2026 at 9:00am;

- January 8, 2026 at 9:00am; and

- January 11, 2026 at 9:01am.

44.     Defendant also sent Plaintiff messages from yet another different telephone number, (888) 780-1951:

12



45.     As shown above, Defendant sent Plaintiff telemarketing text messages to Plaintiff on the following dates and times:

- January 6, 2026 at 9:47am;

- January 8, 2026 at 9:00am; and

- January 11, 2026 at 9:01am.

46.     In this set of messages, Defendant did not properly identify itself, and instead used the name "Wholesale Nursery Co."

47.     Plaintiff did not provide prior express invitation or permission or consent for the

13

messages he received.

48.     To the extent Defendant had *any* consent to call or text Plaintiff, revoked that consent by sending Defendant a "Stop" message on September 23, 2025, specifically telling Defendant that he did not wish to receive any more messages from Defendant.  Defendant ignored Plaintiff's request and continued to spam him with unwanted messages.

49.     Defendant's violations were, at a minimum, negligent.

50.     Alternatively, Defendant's violations were willful and knowing.

51.     Plaintiff and the class were damaged by the violations alleged herein. In addition to using their cellular data, storage, and battery life, they suffered an invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls and text messages. Their privacy was improperly invaded, the Defendant's text messages temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted text messages.  Defendant's telephone calls/text messages were annoying and a nuisance and wasted the time of Mr. Mott and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

52.     Upon information and belief, Defendant uses automated systems to send text messages, to hundreds if not thousands of consumers across the U.S. as part of its marketing strategy.

53.     Defendant sent two or more telephone solicitations to Plaintiff, whose number was on the National Do-Not-Call Registry at the time of the text messages.  This constitutes a violation

14

of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

54.     Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to $500 per call through 47 U.S.C. § 227(c).

55.     Plaintiff is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

56.     Defendant made two or more telemarketing calls to Plaintiff despite not having in place the required policies and procedures prior to making such calls – as evidenced by Defendant's failure to stop texting Plaintiff when he requested.  This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d).

57.     Accordingly, for violations of 47 C.F.R. § 64.1200(d), Plaintiff is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

58.     Plaintiff is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

59.     Defendant, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

60.     To the extent Defendant outsourced its illegal texting campaigns, it is still liable for calls that violate the TCPA.

61.     Defendant is liable for third-parties' actions because it took steps to cause the texts to be sent, and because the texts were sent pursuant to Defendant's actual authority, apparent authority and/or ratification.

62. On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

63. *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

64. Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the proposed "Classes," as defined as follows:

> **National Do-Not-Call Class**: Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or text messages in a 12-month period when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for 31 days or more at the time of the calls/texts, from four years prior to the filing of the Complaint through class certification.

16

**Internal Do-Not-Call Class**: Plaintiff and all persons within the United States whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or text messages in a 12-month period, including at least one call/text message after the person requested that the calls or messages stop from four (4) years prior to the filing of the Complaint to the date of class certification.

66. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

67. The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

68. The Defendant's records will reveal the precise number of class members.

69. The exact number and identities of the people who fit within the Class are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

    a.  The time period(s) during which Defendant or its agent(s) sent the text messages at issue;

    b.  The telephone numbers to which Defendant or its agent(s) sent the text messages at issue;

    c.  The telephone numbers for which Defendant had prior express written consent;

    d.  The telephone numbers that replied to Defendant's text messages with a message communicating a desire that Defendant stop sending text messages;

    e.  The purposes of such text messages; and

    f.  The names and addresses of Class members.

17

70. Upon information and belief, the Class is comprised of hundreds, if not thousands, of individuals.

71. There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

    a. Whether Defendant (or someone acting on its behalf) sends telemarketing text messages;

    b. Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

    c. Whether Defendant or the entities with which they contract send solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

    d. Whether Defendant had the required policies and procedures prior to sending telemarketing text messages;

    e. Whether Defendant honors do-not-call requests;

    f. Whether Defendant's statutory violations were willful and knowing; and

    g. Whether Defendant should be enjoined from engaging in such conduct in the future.

72. Plaintiff is a member of the Classes in that Defendant sent two or more texts for telemarketing purposes, in a one-year period to his telephone number, after he asked Defendant to stop and while his number was registered to on the National Do-Not-Call Registry.

73. Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

74. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Class spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

18

75.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

76.    Plaintiff is an adequate representative of the Classes and will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.  Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill his obligations as a class representative.

77.    Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

78.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

79.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

80.    Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the National Do-Not-Call Class)**

81.    Defendant made, or had made on its behalf, telephone solicitations to Plaintiff and putative National Do-Not-Call Class Members' telephone numbers.

82.    Plaintiff's and putative National Do-Not-Call Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

83.    Plaintiff and putative National Do-Not-Call Class Members each received two or more such calls in a 12-month period.

19

84.     Plaintiff and putative National Do-Not-Call Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

85.     Plaintiff and putative National Do-Not-Call Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Internal Do-Not-Call Class)**

86.     Defendant sent numerous text messages for telemarketing purposes to Plaintiff's and putative Class Members' telephone numbers.

87.     Defendant did so despite not having a written policy pertaining to "do not call" requests.

88.     Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

89.     Defendant did so despite not recording or honoring "do not call" requests.

90.     Defendant sent two or more telemarketing text messages to Plaintiff and putative Class Members' telephone numbers in a 12-month period.

91.     Plaintiff and putative Internal Do-Not-Call Class Members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

92.     Plaintiff and putative Internal Do-Not-Call Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing his counsel as Class Counsel;

B.      An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.      An award of statutory damages;

E.      An award of treble damages;

F.      An award of reasonable attorneys' fees and costs; and

G.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Date: January 16, 2026

Respectfully submitted,
/s/ David W. Garrison
**DAVID W. GARRISON (TN BAR NO. 24968)**
**JOSHUA A. FRANK (TN BAR NO. 33294)**
BARRETT JOHNSTON MARTIN & GARRISON, PLLC
200 31st Avenue North
Nashville, TN 37203
Telephone: (615) 244-2202
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

**MAX S. MORGAN***
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Telephone: (267) 587-6240
max.morgan@theweitzfirm.com

*\* Motion for Pro Hac Vice forthcoming*
*Attorneys for Plaintiff and Putative Class*

21